UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM DEYESSO,<br>　　　　　Plaintiff,<br><br>v.<br><br>KAIZEN MANAGEMENT, LLC,<br>KAIZEN MEDIA HOLDINGS LLC,<br>KAIZEN VIRTUAL TRAINING, LLC,<br>D. KIM HACKETT, AND KEVIN CONNOR<br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)　C.A. No. 08-11538-LTS<br>)<br>)<br>)<br>)<br>)<br>) |

**OPPOISITION TO DEFENDANT KEVIN CONNOR'S
COMBINED MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION,
AND ALTERNATIVELY, MOTION TO TRANSFER VENUE**

Plaintiff William Deyesso ("Deyesso") hereby opposes the Combined Motion to Dismiss for Lack of Personal Jurisdiction, and Alternatively, Motion to Transfer Venue ("Combined Motion") filed by Defendant Kevin Connor ("Connor") as there are the minimum contacts with Massachusetts needed for this Court to assert personal jurisdiction over Connor and as it would be unfair and inappropriate to transfer venue in this matter. The Combined Motion asserts that, *inter alia*, Connor does not have any important contacts with Massachusetts and, thus, the Court has no jurisdiction to hear this case; in the alternative, the Combined Motion argues that unspecified witnesses live in Florida, so the action should be transferred to a court in that state. Connor misapprehends the law of personal jurisdiction as the minimum contacts required for this Court to assert jurisdiction over him pursuant to the Constitution and as explicated in *International Shoe* and its progeny clearly exist. *See International Shoe Co. v. Washington*, 326 U.S. 310 (1945); Fed. R. Civ. P. 12(b)(2). Further, Connor has not met his burden as the party requesting transfer to show the sort of inconvenience required for the Court to exercise its

discretion to transfer this case. *See* 28 U.S.C. § 1404(a). In further support of his request that the Combined Motion be denied in all respects, Deyesso states as follows:

## I. FACTS

1. Deyesso lived in the Boston area during all times relevant to this matter and all of his businesses were and are based in Massachusetts. Affidavit of William Deyesso ("Deyesso Aff."), at ¶ 4. A true and accurate copy of the Deyesso Aff. is attached hereto as Exhibit "A."

2. Deyesso, in both his individual capacity and through the companies he directs, makes loans as investments to various business enterprises across the country. In the second half of 2005, Connor told one of Deyesso's agents of an investment opportunity in Defendants Kaizen Virtual Training, LLC and Kaizen Media Holdings LLC ("Kaizen Entities"). At that time, Deyesso had no involvement in or knowledge of the Kaizen Entities. Deyesso Aff., at ¶ 3.

3. Shortly thereafter, Deyesso's colleague Richard P. McCabe ("McCabe") traveled to Florida to meet with Connor regarding Deyesso's possible investment in the Kaizen Entities. McCabe works with Deyesso in Hanover, Massachusetts, and flew to Florida from Boston to discuss Deyesso's potential investment in the Kaizen Entities with Connor. Deyesso Aff., at ¶ 4.

4. On November 4, 2005, Deyesso lent $100,000.00 to the Kaizen Entities, which was reflected in a Promissory Note dated the same day ("Original Note"). Deyesso Aff., at ¶ 5 and Ex. "A."

5. The Original Note states that the Kaizen Entities consented "to the non-exclusive personal jurisdiction of the Federal and State courts located in Suffolk and Norfolk County, Massachusetts in any and all actions between the Borrower [i.e. the Kaizen Entities] and the Lender [i.e. Deyesso] arising under or in connection with this Promissory Note, the Loan or any other of the Loan Documents." Deyesso Aff., at ¶ 6 and Ex. "A," at p. 2.

6. The forum selection clause in the Original Note is similar to the type of clauses Deyesso and his businesses insert into their contracts with non-Massachusetts people and entities. Deyesso states in his Affidavit that he typically insists on such forum selection clauses because he is familiar with Massachusetts law, his attorneys are Massachusetts lawyers located in Boston, and such clauses avoid additional expenses related to litigating far from the location of his businesses. Deyesso Aff., at ¶ 7.

7. Following the execution of the Original Note in November 2005, Deyesso continued to have a relationship with the Kaizen Entities and with Connor, who was the member of at least one of the Kaizen Entities. During this period, Connor sought additional infusions of money from Deyesso for the Kaizen Entities' operations. Deyesso Aff., at ¶ 8.

8. Also during this time period or shortly thereafter, both Connor and Defendant D. Kim Hackett ("Hackett") traveled several times to Massachusetts to meet with Deyesso and McCabe regarding Deyesso's investment in the Kaizen Entities. Deyesso Aff., at ¶ 9; Affidavit of D. Kim Hackett ("Hackett Aff."), at ¶ 7. A true and accurate copy of the Hackett Aff. is attached hereto as Exhibit "**B**."

9. In addition to traveling to Massachusetts, both Connor and Hackett had numerous electronic mail and telephone contacts with Deyesso and other people who worked with him, including McCabe, regarding his investment in the Kaizen Entities. These electronic mail and telephone contacts occurred while Deyesso was located in Massachusetts, which is where, as was noted above, his business is located and where he lives. Deyesso Aff., at ¶ 10; Hackett Aff., at ¶¶ 8-9.

10. At the time Connor called Deyesso and others in Massachusetts, the telephone numbers of Deyesso's business line, his business facsimile line, and his cell phone were all in the 781 area code, which is a Massachusetts area code. Deyesso Aff., at ¶ 10.

11. Throughout 2006 and 2007, Deyesso's business contacts with the Kaizen Entities and Connor continued, as Deyesso provided additional loans to the Kaizen Entities during this period. These loans were memorialized by various Promissory Notes, all of which contained forum selection clauses vesting Massachusetts courts with jurisdiction over any disputes regarding these notes or any associated loan documents. *See* Deyesso Aff., at ¶¶ 11-14.

12. On January 7, 2008, Deyesso made the loan to the Kaizen Entities that is the subject of the instant lawsuit, and which was reflected by a new Promissory Note in the original principal amount of $820,138.48 ("Current Note") that amended and restated the outstanding note from the Kaizen Entities to Deyesso. The Current Note has a forum selection clause vesting jurisdiction in Massachusetts courts that is identical to the one in the Original Note and all subsequent notes mentioned in Deyesso's Affidavit and in this Opposition. Deyesso Aff., at ¶ 15 and Ex. "B;" Hackett Aff., at ¶ 3 and Ex. "A."

13. As part of the consideration for the Current Note, Connor agreed to sign a personal guarantee of the Current Note. This guarantee was executed "as a sealed instrument under Massachusetts law" on January 7, 2008. Deyesso Aff., at ¶ 16 and Ex. "C;" Hackett Aff., at ¶ 4 and Ex. "B."

14. In the Complaint, Deyesso alleges, among other things, that the Kaizen Entities failed to timely make monthly payments of interest pursuant to the Current Note on February 7, 2008, March 7, 2008, April 7, 2008, May 7, 2008, June 7, 2008, and July 7, 2008. Deyesso, through counsel, sent written notification of this default to the guarantors of the Current Note,

including Connor. Neither the Kaizen Entities nor any of the guarantors met their obligations under the terms of the Current Note or its guarantee. Complaint, at ¶¶ 17-19.

## II. PROCEDURAL POSTURE

15. On or about July 11, 2008, Deyesso filed his Complaint with the Suffolk Superior Court initiating the instant matter. *See Deyesso v. Kaizen Management LLC, et al.*, No. SUCV2008-03089 (Mass. Super. Ct. 2008).

16. On or about September 9, 2008, after Deyesso had assented to a continuance for Connor to answer the Complaint filed in the Suffolk Superior Court, Connor filed his Notice of Removal with the United States District Court for the District of Massachusetts.

17. On or about September 22, 2008, Connor filed the Combined Motion.

18. On or about October 6, 2008, the Court allowed Deyesso's Motion for Extension of Time to oppose the Combined Motion, thereby permitting Deyesso's Opposition to be filed by or before October 20, 2008.

19. On or about October 16, 2008, Deyesso and Connor filed their Consent to Proceed before the Magistrate Judge in this matter.

## III. ARGUMENT

### A. This Court Has Personal Jurisdiction Over Connor as There Are Minimum Contacts Between Him and Massachusetts Necessary to Pass Muster Under the Due Process Clause of the U.S. Constitution.

20. To establish personal jurisdiction in this diversity matter, Deyesso must show that the Massachusetts long-arm statute, G.L. c. 223A, § 3, grants jurisdiction here, and that exercise of that jurisdiction is consonant with the Due Process Clause of the U.S. Constitution. *See Hannon v. Beard*, 524 F.3d 275, 280 (1st Cir. 2008).

21.   The relevant portion of the Massachusetts long-arm statute provides that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's transacting any business in this commonwealth." G.L. c. 223A, § 3(a). "That provision 'should be construed broadly,' and 'does not require that the defendant have engaged in commercial activity. [The] language is general and applies to any purposeful acts by an individual, whether personal, private, or commercial.'" *Hannon*, 524 F.3d at 280 (quoting *Ealing Corp. v. Harrods Ltd.*, 790 F.2d 978, 982 (1st Cir. 1986)).

22.   Physical presence is not required for Massachusetts courts to have jurisdiction, but presence in the forum state is one of the factors considered. In *Hahn v. Vermont Law School*, 698 F.2d 48, 49 (1st Cir. 1983), the First Circuit held that a law school "transacted business" in Massachusetts for the purposes of Section 3(a) when it mailed application materials and an offer of admission to a prospective student in Massachusetts, even though the school was located out of state and no school employees or agents were present in state as part of the circumstances giving rise to that case.

23.   In this case, Connor knew that Deyesso was located in Massachusetts during the negotiations for Deyesso's original loan to the Kaizen Entities. Deyesso Aff., at ¶¶ 3-4. During the negotiation of the loan and then afterwards, Connor contacted Deyesso and others in Massachusetts. *Id.*, at ¶ 10; Hackett Aff., at ¶¶ 8-9. Furthermore, Connor and his associate Hackett traveled to Massachusetts to meet with Deyesso and others regarding the facts at issue in this lawsuit. Deyesso Aff., at ¶ 9; Hackett Aff., at ¶ 7.

24.   All of the Promissory Notes at issue in this case, including the Current Note, contain an explicit forum selection clause vesting personal jurisdiction in the Massachusetts

6

federal and state courts located in Suffolk and Norfolk Counties "in any and all actions between the [the Kaizen Entities] and [Deyesso] arising under or in connection with" any of these notes or any other related or connected loan documents. Deyesso Aff., at ¶ 6 and Ex. "A," at p. 2. There can be little doubt that Connor's written guarantee of the Current Note is related to that note. *See, e.g., Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 320 n.5 (1999) (discussing notes and a related guarantee).

25.    Also, the notes at issue all provide for their construction pursuant to Massachusetts law, and Connor's guarantee was a sealed instrument under Massachusetts law. Deyesso Aff., at ¶¶ 6, 16, Ex. "A," and Ex. "C;" Hackett Aff., at ¶ 4 and Ex. "B." *See Van Dusen v. Barrack*, 376 U.S. 612, 645 (1964) (finding that it is appropriate to have the trial of a diversity case in the forum applying its own law).

26.    For the foregoing reasons it is plain that the long-arm provisions of G.L. c. 223A, § 3(a) reach Deyesso's claims against Connor and the other Defendants, as they have all "transacted business" in Massachusetts.

27.    Once it has been established that the Massachusetts long-arm statute applies, the Court then determines if the safeguards of due process have been satisfied as well. "In the personal jurisdiction context, we have characterized compliance with the Constitution as implicating three distinct components, namely, relatedness, purposeful availment (sometimes called 'minimum contacts'), and reasonableness." *Hannon*, 524 F.3d at 282 (quoting *Massachusetts School of Law at Andover, Inc. v. Am. Bar Assoc.*, 142 F.3d 26, 35 (1st Cir. 1998)).

28.    Federal courts have found that personal jurisdiction is appropriate under the Constitution in a wide variety of commercial paper cases involving out-of-state guarantors. In

one such opinion, the Court held that when a defendant guaranteed a loan by an Oklahoma lender and the "source" of the money for the loan was Oklahoma, the exercise of personal jurisdiction by the Federal court in Oklahoma was appropriate. *See Fed. Nat. Bank & Trust Co. of Shawnee v. Moon*, 412 F. Supp. 644, 646 (D. Okla. 1976). Personal jurisdiction was found in the *Moon* case even though one of the guarantors never visited Oklahoma, the loan at issue was negotiated in a different state, and the loan documents were executed outside of Oklahoma. *Moon*, 412 F. Supp. at 645.

29. The holding in *Moon* that an out-of-state guarantor is subject to personal jurisdiction has also been followed by the Seventh Circuit and the Southern District of New York, among others. *See O'Hare Int'l Bank v. Hampton*, 437 F.2d 1173, 1177 (7th Cir. 1971) (opining that where discussions with a guarantor occurred in Illinois, payments under the guaranteed loan were made to the lender in Illinois, and the guarantee should be construed according to the law of Illinois, personal jurisdiction over the guarantor by Illinois courts did not offend traditional notions of fair play and substantial justice); *Saltzman v. Louisiana Auction Exchange, Inc.*, 997 F. Supp. 537, 539-41 (S.D.N.Y. 1998) (holding that guarantor of art auctioneer was subject to personal jurisdiction in New York even though auction occurred in Louisiana, the auctioneer mailed materials to New York, painting at issue was shipped to New York, and the agreement at issue provided for a refund to be made to purchaser in New York). *Cf. Lancaster v. Züfle*, 165 F.R.D. 38, 40-42 (S.D.N.Y. 1996) (finding that a New York district court had personal jurisdiction over a non-resident maker of a promissory note in action to recover on the debt even though the documents were signed outside of New York, as there were New York choice of law clauses in loan documents, a New York attorney acted on the maker's

behalf in a New York bank transaction, the maker borrowed money in New York, and the maker was a signatory to a corporate checking account in New York).

30.     In this case, the factors set forth in *Hannan* to determine compliance with the Due Process Clause – relatedness, purposeful availment, and reasonableness – have all been met. *See Hannon*, 524 F.3d at 282. Connor's contacts with Massachusetts are explicitly related to the dispute at issue in this case. In relation to the matters at issue here, he communicated with people in Massachusetts, traveled to this state, and guaranteed a loan from a Massachusetts lender that was to be repaid in Massachusetts. Further, Connor made a purposeful availment of these Massachusetts contacts, as he knew or should have known of Deyesso's residence and work in Massachusetts, that the notes in question all had Massachusetts choice of law and forum selection clauses, that Connor's guarantee with executed under Massachusetts law, and that Connor voluntarily visited this state as part of his business relationship with Deyesso. Finally, the exercise of personal jurisdiction by the Massachusetts courts is eminently reasonable due to the wide number of contacts between Connor and Massachusetts in this case.

31.     As in the *Moon* case, the guarantor here, Connor, availed himself of a forum state lender and "the 'source' of the money for the loan in question comes from the" forum state. *Moon*, 412 F. Supp. at 646. But Connor's contacts with Massachusetts are even more fulsome than Moon's contacts with Oklahoma that the Court found to confer personal jurisdiction, as Connor guaranteed a loan that unambiguously required adjudication in Massachusetts courts applying Massachusetts law, he regularly communicated with people in Massachusetts, and even traveled to Massachusetts. Connor has subjected himself to the in personam jurisdiction of the Massachusetts courts through his own contacts with this state, and hearing this case in

Massachusetts would not offend our notions of fair play and substantial justice. *See O'Hare Int'l Bank*, 437 F.2d at 1177.

32.     In the instant case, Deyesso seeks that the Court deny Connor's Combined Motion as to his request for this case to be dismissed for lack of personal jurisdiction as personal jurisdiction is proper in the United States District Court for the District of Massachusetts.

### B. Connor Has Not Met His Burden to Demonstrate the Necessary Level of Inconvenience to the Parties and Witnesses in this Case, Therefore, the Court Should Deny His Motion to Transfer.

33.     Venue in a civil action is proper "in the judicial district in which all plaintiffs reside *or* all defendants reside *or* in which the claim arose." 28 U.S.C. § 1391(a) (emphasis supplied). Deyesso resides in Massachusetts and his claims arose in Massachusetts. *See* Deyesso Aff.

34.     Despite appropriate venue, a Court may transfer any civil action to any other district or division where it might have been brought for the convenience of the parties and witnesses and "in the interest of justice." 28 U.S.C. § 1404(a).

35.     Transfer of an action is within the sound discretion of the trial court. *See Workgroup Techn. Corp. v. MGM Grand Hotel, LLC*, 246 F.Supp.2d 102, 116 (D.Mass. 2003).

36.     While the convenience of the parties is a significant factor in determining whether the transfer of an action is appropriate, the convenience of *counsel* is of no consequence. *See Princess House, Inc. v. Lindsey*, 136 F.R.D. 16, 18 (D.Mass. 1991) (emphasis supplied).

37.     When considering the balance of convenience prior to a proposed transfer, the Court should consider the potential for inconvenience of the parties and/or witnesses, the degree of importance of the testimony of the possibly inconvenienced witnesses, the cost of obtaining witnesses and ability of the parties to pay for witness travel and lodging, the ability of the Court

to compel witness testimony, and the availability of documentary and non-testimonial evidence. *See Princess House*, 136 F.R.D. at 18-20 (regarding the first four factors above); *Gemini Investors, Inc. v. Ameripark, Inc.*, 542 F.Supp.2d 119, 127 (noting that the availability of documents factor is "insignificant when the documents are mobile").

38.     The party moving for transfer bears the burden of demonstrating why the case should be transferred and overcoming the presumption in favor of the original choice of venue. *See Gemini Investors*, 542 F.Supp.2d at 126 (finding that "there is a strong presumption in favor of a plaintiff's choice of forum"); *see also Fairview Mach. & Tool Co. v. Oakbrook Int'l, Inc.*, 56 F.Supp.2d 134, 141 (D.Mass. 1999) (holding that there is a presumption in favor of a plaintiff's choice of forum as well as the defendant's burden of proving that the requested transfer is warranted).

39.     Contrary to Connor's bald assertion, there are no significant problems with litigating the case here in Massachusetts. Connor points to no specific logistical or convenience problems in the Combined Motion or its supporting documentation. Further, Deyesso believes that all known parties and witnesses will be subject to the subpoena power of this Court. Even if certain witnesses are required to travel for this case, the inconvenience will be minimal as any trial will be brief. Additionally, the vast majority of this case focuses on the interpretation of various documents, such as the Current Note and Connor's guarantee of that note, which are all mobile and easily presented in Massachusetts.

40.     By failing to provide specific examples of witnesses that will be substantially inconvenienced should this matter remain in Massachusetts, Connor is unable to meet the criteria set forth for transfer by the District of Massachusetts in *Princess House*: "A party seeking transfer [based on witness convenience] must, therefore, specify the key witnesses to be called,

accompanied by a general statement as to what their testimony will entail." *Princess House*, 136 F.R.D. at 18 (citations omitted); *see also Gemini Investors Inc.*, 542 F.Supp.2d at 126 (noting that defendant's specification of two witnesses, absent a statement as to their testimony, was "woefully inadequate").

41. If this case is transferred, the "transfer would merely shift the inconvenience from one party to the other." *Princess House*, 136 F.R.D. at 18 (citing *Berrigan v. Greyhound Lines, Inc.*, 560 F.Supp. 165, 169 (D.Mass. 1982)). Judges in the District of Massachusetts have repeatedly expressed disfavor to such "inconvenience shifting." *Gemini Investors, Inc.*, 542 F.Supp.2d at 126-27 (citing *Berrigan*, 560 F.Supp. at 169).

42. The only case cited by Connor in support of his transfer request, the *Princess House* decision, can be easily distinguished from this matter. In *Princess House*, at least 12 critical witnesses were both unwilling to testify in plaintiff's chosen forum and were outside the subpoena power of the court, all documentary evidence was in another forum, the claims involved concerned a considerable amount of disputed facts, and the law of another forum was likely to apply. *See Princess House*, 136 F.R.D. at 21-23. The facts in this case are almost the exact opposite from the ones recited above that militated in favor of transfer: Connor has not even alleged that necessary witnesses will not testify in Massachusetts or are outside this Court's subpoena power, all documentary evidence is available in Massachusetts, the disputed facts are few, and Massachusetts law is likely to apply here. There is no good reason to transfer this matter to Florida other than the mere convenience of Connor and his Florida counsel.

43. In the instant case, Deyesso seeks that the Court deny Connor's Combined Motion as to his request for this case to be transferred as Connor has not met his burden to show that such a transfer is appropriate or necessary.

WHEREFORE, Plaintiff William Deyesso respectfully requests that the Court deny Connor's Combined Motion in all respects and grant whatever other relief is proper and just.

Respectfully submitted,
WILLIAM DEYESSO,
By his attorneys,

  /s/ Joshua E. Friedman, Esq.
Joshua E. Friedman, Esquire, BBO No.645256
Bernkopf Goodman LLP
125 Summer Street, Suite 1300
Boston, Massachusetts 02110
Telephone:   (617) 790-3000
Facsimile:   (617) 790-3300
jefriedman@bg-llp.com

Dated: October 20, 2008
460452 v1/37881/25

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 20, 2008

/s/ Joshua E. Friedman