UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM DEYESSO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 08-11538-LTS |
| ) | |
| KAIZEN MANAGEMENT, LLC, ) | |
| KAIZEN MEDIA HOLDINGS, LLC, ) | |
| KAIZEN VIRTUAL TRAINING, LLC, ) | |
| D. KIM HACKETT and KEVIN ) | |
| CONNOR, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM AND ORDER ON DEFENDANT CONNOR'S
MOTION TO DISMISS FOR LACK OF JURISDICTION
AND MOTION TO TRANSFER VENUE.

November 25, 2008

SOROKIN, M.J.

Defendant Kevin Connor's Motion to Dismiss for Lack of Personal Jurisdiction, or Alternatively to Transfer Venue (Docket #5) is DENIED.

I.    STATEMENT OF FACTS

The facts recited herein are drawn from the documents submitted by the Parties. In reviewing the factual submissions, I have viewed the facts in the light most favorable to the moving party. Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir.1992). Thus, when the Parties dispute a fact, I have accepted the Plaintiff's version of the fact, provided that the

1

Plaintiff has alleged specific facts rather than resting upon general conclusory assertions. Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir.1994).

The count of the Complaint directed against Connor (Count II) asserts that he breached his obligations under a guarantee contract benefitting the Plaintiff (the lender under the Note which was the subject of the guarantee). William Deyesso makes loans (both individually and through the companies he directs) to various businesses around the country. Affidavit of William Deyesso, Docket #9-2, at ¶ 3. His offices are located in Massachusetts. Id., at ¶ 2. In 2005, Connor told one of Deyesso's agents of an investment opportunity presented by Defendants Kaizen Virtual Training, LLC, and Kaizen Media Holdings, LLC, ("the Kaizen Entities"). Id., at ¶ 3. Another agent of Deyesso's traveled to Florida to investigate that business opportunity. Id., at ¶ 4. Connor is a shareholder in the Kaizen Entities and he has been employed by those entities, which are Florida limited liability corporations with all of their operations in Florida. Affidavit of Kevin Connor, Docket # 5-4, at ¶¶ 2, 5.

On November 4, 2005, Deyesso lent $100,000 to the Kaizen Entities. Docket #9-2, at ¶ 5. The Promissory Note of that date contained the following forum selection clause:

> "This instrument shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts; provided however, that if any applicable conflict or choice of law rules would choose the law of another state, the Borrower waives such rules and agrees that Massachusetts substantive, procedural and constitutional law shall nonetheless govern.
>
> The Borrower hereby consents to the non-exclusive personal jurisdiction of the federal and state courts located in Suffolk and Norfolk County, Massachusetts in any and all actions between the Borrower and Lender arising under or in connection with this Promissory Note, the Loan or any other of the Loan Documents."

Docket #5-3, at 4; Docket # 9-2, at 8.

Thereafter "Connor sought additional infusions of money from [Deyesso] for the Kaizen

Entities's operations." Docket #9-2, at ¶ 8.  Connor also traveled to Massachusetts several times for meetings with Deyesso regarding his investment. Id., at ¶ 9.  The parties also had telephone, and email communication with one another. Id., at ¶ 10.  Deyesso's phone numbers are each assigned to the 781 area code in Massachusetts. Id.

Deyesso made several additional loans to the Kaizen Entities in April and September of 2006, as well as in October of 2007. Id., at ¶¶ 11-12, 14.   The notes relating to each of these loans (both in subsequent notes, and in an eventual consolidated and amended form) contained the same forum selection clause quoted supra. Id., at ¶¶ 13, 15.  On January 7, 2008 (the date of the Second Amended, Restated and Consolidated Promissory Note (Current Note) which is the subject of this action), Connor signed the Amended Guarantee of the Current Note. Id., at ¶¶ 15-16; Docket # 5-2, at 2 ff.  The execution of these documents occurred in Florida, as it had with the prior loans. Docket # 5-4, at ¶ 6.  Connor's guarantee has no forum selection clause, but does state that it was executed "as a sealed instrument under Massachusetts law." Docket # 5-2, at 2 ff.

## II.  DISCUSSION

A. <u>Personal Jurisdiction</u>

"In its simplest formulation, <u>in personam</u> jurisdiction relates to the power of a court over a defendant." <u>Pritzker v. Yari</u>, 42 F.3d 53, 59 (1st Cir.1994).  "It is of two varieties, general and specific." <u>Id</u>.  Deyesso is proceeding on a specific jurisdiction theory.  "Specific personal jurisdiction . . . is narrower in scope and may only be relied upon 'where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." <u>Id</u>. at 60 (quoting <u>United Elec. Workers v. 163 Pleasant St. Corp.</u>, 960 F.2d 1080, 1088-89 (1st Cir.1992)).

"The proper exercise of specific <u>in personam</u> jurisdiction hinges on satisfaction of two

requirements: first, that the forum in which the federal district court sits has a long-arm statute that purports to grant jurisdiction over the defendant; and second, that the exercise of jurisdiction pursuant to that statute comports with the strictures of the [Due Process Clause of the] Constitution." Pritzker, 42 F.3d at 60; See also Burger King v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (due process constraints subject defendant to forum's jurisdiction only when he has established sufficient meaningful contacts); International Shoe Co. V. Washington, 326 U.S. 310, 316 (1945) (subjecting defendant to forum state's jurisdiction must "not offend 'traditional notions of fair play and substantial justice'") (citations omitted).

Deyesso bears the burden of establishing a prima facie case authorizing personal jurisdiction. U.S.S. Yachts, Inc. v. Ocean Yachts, Inc., 894 F.2d 9, 11 (1st Cir.1990). Mere reliance on the allegations of the pleadings is not enough. Chlebda v. H.E. Fortna & Brother, Inc., 609 F.2d 1022, 1024 (1st Cir.1979). But, "[i]f the plaintiff makes a prima facie showing of jurisdiction supported by specific facts alleged in the pleadings, affidavits, and exhibits, its burden is met." Ealing Corp. v. Harrods, Ltd., 790 F.2d 978, 979 (1st Cir. 1986). Under the prima facie test "a district court does not act as a factfinder; to the contrary, it ascertains only whether the facts duly proffered, fully credited, support the exercise of personal jurisdiction." Alers-Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 84 (1st Cir.1997). However, where a court determines that it may be "unfair in the circumstances" to force an out-of-state defendant to trial on the basis of a tenuous prima facie showing by the plaintiff, it may hold plaintiff to a higher standard: either proof by a preponderance of the evidence, or an "intermediate" standard between the prima facie and preponderance of the evidence standards (avoiding questions of "issue preclusion" and "law of the case"). Boit, 967 F.2d at 677. In this case, given the detailed

and specific evidence provided by Deyesso, I apply the prima facie evidence standard**.**

           1.        Connor Transacted Business in Massachusetts

To establish jurisdiction, Deyesso relies upon the Massachusetts long-arm statute (MLAS), which reads that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . transacting any business in this commonwealth; . . ." M.G.L. c. 223A § 3(a).[1]  The most incidental of purposeful contacts will satisfy the broadly construed transacting business requirement of section 3(a).  See Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc., 764 F.2d 928, 931 (1st Cir.1985) (defendant transacted business under Section 3(a) by sending letters of guaranty into Massachusetts); See, e.g., Hahn v. Vermont Law School, 698 F.2d 48 (1st Cir.1983)(sending law school application information and acceptance letter into Massachusetts); Ealing, 790 F.2d 978 (making phone calls and sending telex draft of business agreement into Massachusetts); Nova Biomedical Corp. V. Moller, 629 F.2d 190 (1st Cir.1980) (sending letters threatening patent litigation).  A defendant need not be physically present in Massachusetts in order to have transacted business here.  Workgroup Tech. Corp. v. MGM Grand Hotel, LLC, 246 F.Supp.2d 102, 109-10 (D.Mass. 2003)(Collings, M.J.).

Connor initially sought funds for the Kaizen Entities from a Massachusetts investor (although Connor was not then in Massachusetts).  Later, he sought further infusions of cash

---

[1] Massachusetts courts construe section 3(a)'s "transacting business" test as extending jurisdiction to the outermost limit permitted by the Due Process Clause. Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H & Co., 295 F.3d 59, 63 (1st Cir.2002). "[W]hen a state's long-arm statute is coextensive with the outer limits of due process, the court's attention properly turns to the . . . federal constitutional standards." Sawtelle v. Farrell, 70 F.3d 1381, 1388 (1st Cir. 1995).

from the Massachusetts investor and had phone and email communication with him. He, according to Deyesso's sworn affidavit, traveled several times to Massachusetts to meet with Deyosso regarding his investment.[2] Finally, he signed a personal guarantee of a loan made by the Massachusetts investor to the Kaizen Entities. These accumulated contacts more than suffice to establish that Connor transacted business in Massachusetts under the long-arm statute. See, Bond Leather Co., 764 F.2d at 931.

2.. Due Process Analysis

The Fourteenth Amendment's concern for fundamental fairness is expressed by the requirement that there be "minimum contacts" between the defendant and the forum state sufficient to establish specific jurisdiction. "[T]he mere existence of a contractual relationship between an out-of-state defendant and an in-state plaintiff does not suffice, in and of itself, to establish jurisdiction . . . . Rather, 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . must be evaluated.'" Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 290 (1st Cir. 1999)(quoting Burger King, 471 U.S. at 479). The test for minimum contacts is in three parts.

a. Claim Must Arise out of or Relate to Forum Contracts

"First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities." United Elec. Workers, 960 F.2d at 1089. "[T]he relatedness test is, relatively speaking, a flexible, relaxed standard." Pritzker, 42 F.3d at 61. However, "[t]he relatedness requirement is not met merely because a plaintiff's cause of action arose out of

---

[2] Although Connor hotly disputes this assertion (See Docket #5-4, at ¶ 3), under the applicable standard the Court accepts Plaintiff's factual assertions, provided they are supported with specific evidence (as is the case here). Ealing Corp, 790 F.2d at 979.

the general relationship between the parties; rather, the action must arise out of the specific contacts between the defendant and the forum state." Sawtelle, 70 F.3d at 1389. Here, Deyesso's claim arises out of Connor's forum state contacts. Specifically, Connor sought form Deyesso, a Massachusetts investor, further infusions of cash from Massachusetts for the Kaizen Entities and agreed to guarantee these loans as inducement to Deyesso.

       b.  Purposeful Availment

Deyesso must also show that Connor's contacts with Massachusetts represented a "purposeful availment of the privilege of conducting activities in [Massachusetts], thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's court foreseeable." United Elec. Workers, 960 F.2d at 1089. The two cornerstones of purposeful availment are "voluntariness and foreseeability." Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 716 (1st Cir.1996). By soliciting funds from Deyesso, a Massachusetts investor, and inducing the investment of funds in the Kaizen Entities by guaranteeing the loads, Connor purposefully availed himself of the privilege of conducting activities in Massachusetts. Two further facts confirm this conclusion. Connor is a shareholder in the Kaizen Entities and thus he reaped a benefit from the loans to those entities.

Moreover, the guarantee itself recites (just above Connor's signature) that it was "executed as a sealed instrument under Massachusetts law." While this language is not a forum selection clause, it does invoke Massachusetts law in manner relevant to the guarantee at issue. M.G.L. c. 4, § 9A provides in relevant part that "[i]n any written instrument, a recital that . . . such instrument is intended to take effect as a sealed instrument, shall be sufficient to give such instrument the legal effect of a sealed instrument." This is not without significance to the

guarantee contract at issue, since a guarantee (like any contract) is void if lacking consideration, and a seal provides a substitute for consideration. See Lawrence H. Oppenheim Co. v. Bloom, 325 Mass. 301 (1950) ("Although no seal was affixed to either guaranty, there was a recital in each that it was executed under seal, which under M.G.L.A. c. 4, § 9A, is sufficient to constitute it a sealed instrument, and no actual consideration need be shown"); Chem-Lac Products v. Gerome, 327 Mass. 394 (1951)( "Consideration was of no consequence since the guaranty was under seal").

Notably, the loan documents referred to in the Amended Guarantee (and which govern the Note guaranteed by Connor) select Massachusetts as the Parties' forum of choice.

Due process also "require[s] that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign.'" Burger King, 471 U.S. at 472 (quoting Shaffer v. Heitner, 433 U.S. 186, 218 (1977)). Evaluating foreseeabilty requires that the court examine the structure of the relationship between the parties. In particular, "with respect to interstate contractual obligations, [the Supreme Court] ha[s] emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." Burger King, 471 U.S. at 473 (quoting Travelers Health Assn.v. Virginia, 339 U.S. 643, 647 (1950)). Connor plainly had fair notice that his activities subjected him to suit in Massachusetts – he solicited funds from a Massachusetts investor, he guaranteed the payment of these funds and he did so "under Massachusetts law" with the knowledge that the borrower had selected Massachusetts as the forum of choice for the Note.

The cases relied upon by Connor for the proposition that provision of a guaranty cannot

alone support jurisdiction are unpersuasive. For example, Connor notes that in <u>Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc.</u>, 764 F.2d 928 (1st Cir.1985), the First Circuit held that a mere guaranty of payment was insufficient to confer personal jurisdiction of Massachusetts courts over the out-of-state guarantor. Docket #12, at 3. The <u>Bond</u> Court, however, noted that the facts it considered did not rise to the level of the "contacts plus" approach it had previously utilized to uphold jurisdiction over a defendant who had "in addition to entering into the contract, solicited, regularly visited and communicated with, and supervised the performance of, the plaintiff." <u>Bond Leather</u>, 764 F.2d 928 at 933 (citing <u>Whittaker Corp. v. United Aircraft Corp.</u>, 482 F.2d 1079 (1st Cir.1973)). Connor's Massachusetts activity was not limited to entering into the guarantee contract. Connor solicited from a Massachusetts lender (on behalf of entities in which he had a financial stake) the investment underlying the guarantee, he subsequently communicated with that Massachusetts lender concerning further investment and he visited Massachusetts in connection with the underlying transaction. These contacts constitute a "contract plus" fact pattern supporting jurisdiction under the <u>Bond</u> analysis (unlike the situation presented in Bond, where the Court found "absolutely no supplemental contacts" linking the out-of-state guarantor to Massachusetts. <u>Id.</u>, at 934.

### c. <u>Gestalt Factors</u>

The third element of the due process inquiry requires that "the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable." <u>United Elec.Workers</u>, 960 F.2d at 1089. The Gestalt factors include, "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy,

and (5) the common interests of all sovereigns in promoting substantive social policies." Id. at 1088. "These [G]estalt factors are designed to put into sharper perspective the reasonableness and fundamental fairness of exercising jurisdiction in particular situations." Pritzker, 42 F.3d at 64. The Gestalt factors "are not ends in themselves, but they are, collectively, a means of assisting courts in achieving substantial justice. In very close cases, they may tip the constitutional balance." Ticketmaster, 26 F.3d at 209.

In this case the Gestalt factors do not affect the analysis. Connor must "demonstrate some kind of special or unusual burden" associated with appearing in Massachusetts (Pritzker, 42 F.3d at 64), and he has not done so. Massachusetts has an interest in adjudicating a dispute concerning a guaranty executed as a sealed instrument under Massachusetts law, which guarantees the payment of funds in Massachusetts to a Massachusetts investor and arising out of loans sought by the guarantor — loans which were induced, at least in part, by the guaranty and concerning which Massachusetts is the forum of choice. While, as Connor notes, the Kaizen Entities are located in Florida and negotiations occurred there, these factors are insufficient to defeat the jurisdiction of this Court.

B.. Venue

Alternatively, Connor seeks a change of venue to the District of Florida, pursuant to 28 U.S.C. §1404(a). Venue is proper in Massachusetts because the Plaintiff resides here. 28 U.S.C. § 1391(a). "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §1404(a). The decision on choice of venue is a matter within the district court's discretion. Codex Corp. v. Milgo Electronic Corp., 553 F.2d 735, 737 (1st Cir.1977). In

making such a decision, the court must balance several factors, including the plaintiff's choice of forum. Boateng v. General Dynamics Corp., 460 F.Supp.2d 270, 275 (D.Mass.2006)(Saylor, J.). "A presumption in favor of plaintiff's choice of forum exists, and the burden of proving that transfer is warranted rests with the defendant." Id. (quoting Princess House, Inc. v. Lindsey, 136 F.R.D. 16, 18 (D.Mass.1991)). The plaintiff's choice of forum is entitled to great weight. Id. (quoting Fairview Mach. & Tool Co., Inc. v. Oakbrook Int'l, Inc., 56 F.Supp.2d 134, 141 (D.Mass.1999)). Other factors to consider include the convenience of the parties and witnesses, the availability of documents and the interests of justice. Id.

Massachusetts is no doubt a less convenient forum for Connor and the remaining defendants, who would have to produce documents and witnesses in Massachusetts rather than in their home state of Florida. However, the transfer of the case to Florida would impose the identical burden upon Deyesso. "The presumption in favor of a plaintiff's choice of forum renders transfer inappropriate where its effect is merely to shift the inconvenience from one party to the other." Id. (citing Sigros v. Walt Disney World Co., 129 F.Supp.2d 56, 71 (D.Mass.2001)).

The convenience of witnesses is "probably the most important factor" among those to be considered by the Court. Id. (citing Princess House, 136 F.R.D. at 18)). The Court considers in this connection the number of potential witnesses located in each potential venue, the nature and quality of their testimony, and whether the witnesses can be compelled to testify. Id. "A party seeking transfer on this basis must, therefore, specify the key witnesses to be called, accompanied by a general statement as to what their testimony will entail." Id. (quoting Princess House, 136 F.R.D. at 18). Connor has not provided the Court with such a listing of anticipated witnesses or descriptions of their anticipated testimony in this case. Nor has he

identified any particular difficulty associated with the production of relevant documents in Massachusetts.[3]  He is therefore unable to carry his burden of persuasion.

## CONCLUSION

For the foregoing reasons, Connor's Motion to Dismiss for Lack of Personal Jurisdiction, or Alternatively to Transfer Venue (Docket #5) is DENIED .

    /s / Leo T. Sorokin
UNITED STATES MAGISTRATE JUDGE

---

[3] The case does not on its face appear to be especially document-intensive, and the key documents appear already to have been made a part of the record.